1
Tristram Buckley (187754)
Law Offices of Tristram Buckley
2
426 S. Rexford Drive, Suite 12
Beverly Hills, CA 90212
3
310.980.1842
4
888.315.9188 (Fax)
Tristram_Buckley@yahoo.com
5
6
*Attorneys for the Plaintiffs Sara Lyons and Megan Miller*

7

**UNITED STATES DISTRICT COURT**
8
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

9

10
SARA LYONS and MEGAN MILLER | Case No.

11
Plaintiffs, | COMPLAINT FOR:

12
v. | **1. COPYRIGHT INFRINGEMENT**
**2. FEDERAL UNFAIR COMPETITION**
13
BRANDY MELVILLE, MARSAN LTD | **15 U.S.C. 1125**
SILVIO MARSAN, MAUDE LISE | **3. COMMON LAW UNFAIR**
14
KERMABON, STY888, YYGM, S.A., A | **COMPETITION**
Swiss Corporation, JESSY LONGO, | **4. STATUTORY UNFAIR**
15
ROBERTO RIVONI, STEPHAN MARSON, | **COMPETITION (§17200 et seq.)**
YVAN MARSON and Does 1 through 10, | **5. FALSE DESIGNATION OF ORIGIN**
16
inclusive, | **6. COMMON LAW TRADEMARK**
**VIOLATION**
17
Defendants. | **7. VIOLATIONS OF *THE CONSUMER***
***LEGAL REMEDIES ACT***
18
| **8. QUANTUM MERUIT**
| **9. UNJUST ENRICHMENT**
19

20

21
**INTRODUCTORY ALLEGATIONS**

22

23
    1.    The Defendants own and operate a controversial chain of clothing stores that
24
market themselves to young teenage girls as being artsy, edgy, hip and trendy. According to
25
records with the California Secretary of State, the Defendants are not lawfully conducting
26
business within the Sate of California.

27
    2.    Unfortunately for young Artists like the plaintiffs Sara Lyons, Megan Miller
28
and others, the Defendants get their artsy, edgy, hip and trendy looks by intentionally pirating

1

the Plaintiffs' and other Artist's work and then passing-off the Plaintiff Artists' artwork as their own on their clothing and merchandise.

3.      In addition, the Defendants have pirated Sara Lyon's trademark and sold that the Plaintiff's mark on their merchandise without the Plaintiff's consent and to her determinant.

4.      In fact, the marketing and merchandising of others intellectual properties is the Defendants' *modus operandi,* by the photo below from the Defendant's *Brandy Melville* store.

5.      As shown in the photo, the Defendants are offering for sale to the public, *without authorization and consent,* merchandise bearing the valuable registered trademarks of the ***Jets*** (a New York professional football team), the ***Yankees*** (a New York professional baseball team), ***Yale*** (an Ivy league university in Connecticut[1]), and ***Wesleyan*** (a top ranked private liberal arts college in Connecticut).



6.      The Plaintiff Artists bring this action for copyright infringement, common law trademark infringement; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition, unfair competition under California State statutory and common law and for violations of the *Consumer Legal Remedies Act.*

7.      Plaintiffs seek injunctive relief, an accounting and award of Defendants' profits; compensatory, treble, and/or statutory damages; an award of costs and attorneys' fees;

[1] http://licensing.yale.edu/yale-trademark-licensing

2

punitive and exemplary damages and such other and further relief as the Court deems just and proper.

8.     The Defendants, a family owned business originally from Croatia, are unlawfully doing business in the State of California under the name *Brandy Melville.*

9.     Plaintiff, Sara Lyons, is a young local Southern California artist whose original signature artwork was pirated by the Defendants.

10.     The Defendants knowingly copied the Artist's work and passed it off as their own, selling her creative art on T-shirts and merchandise throughout the United States and possibly overseas as well.

11.     Plaintiff Megan Miller is also a young artist whose original artwork was pirated by the Defendants.

12.     The Defendants copied Miller's work and passed it off as their own on T-shirts and other merchandise.

13.     One of the Defendants' own employees felt so bad about being a party to this theft of these Artists' work that they actually emailed Plaintiff Megan Miller and admitted Brandy Melville stole the Plaintiff's artwork and acknowledged that they knew Miller was the owner of the design when they copied it and offered the artwork for sale.

14.     Not only have the Defendants pirated the Plaintiffs' art and style, but making matters worse for these Artists is the fact that the *Brandy Melville* business model is directly contrary to their artistic, professional and personal views.

15.     By featuring the Plaintiffs' artwork on their merchandise and clothing the Artists' reputations were damaged by the implication of their endorsement of *Brandy Melville,* as outlined further below.

16.     The Defendants have an established track record and a business practice of pirating the work of young artists and then passing those works off as their own, as shown hereinbelow.

17.     Included among the artists the Defendants' have unlawfully exploited, in addition to Sara Lyons and Megan Miller, is Laura McMahon, Isabella Rose Taylor, Masonic Boom, and others.

3

18.    The Plaintiffs sought to resolve this matter informally with the Defendants but discovered the Defendants have, by design, made it all but impossible to find anyone (person or entity) who can be held accountable.

19.    This is an element of the Defendants' strategy—to unlawfully exploit the work of others while avoiding accountability for their unfair and unlawful practices.

20.    Not only have they failed to register with the Secretary of State as required (e.g., including failing to provide an agent for service of process), but they have intentionally concealed any management contact information, not even providing a business office address.

21.    When the Plaintiff did contact someone in management they claimed they were not in management, they used a Gmail address rather than a company email address and they stated all communications should be by telephone rather than in writing.

22.    Plaintiffs seek compensatory, statutory, punitive and exemplary damages in order to compel the Defendants to cease their illicit exploitation of gifted young artists for their illicit financial gain.  While these Defendants make millions of dollars these Plaintiff should not be exploited starving artists.

Plaintiffs Sara Lyons and Megan Miller complain and allege the following against Defendants MARSAN LTD, SILVIO MARSAN, STEPHAN MARSON, YVAN MARSON, MAUDE LISE KERMABON BRANDY & MELVILLE, YYGM, S.A., JESSY LONGO, ROBERTO RIVONI, STY888, and Does 1 through 10, as follows:

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction of this action under 28 U.S.C. §1331, 1337 and §1338, in that the Plaintiff's claims arise under 17 U.S.C. §101 Et Seq and 15 U.S.C. 1125(A) and the amount in controversy exceeds $75,000.  The Court has jurisdiction over the related State claims pursuant to 28 U.S.C. §1338(b) and 28 U.S.C. §1367(a).

24.    This Court has supplemental jurisdiction over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with Plaintiffs' federal claims and arise from a common nucleus of operative facts such that the administration of Plaintiffs' state law claims with its federal claims furthers the interest of

judicial economy.

25.     This District Court is the proper venue for this action as a substantial part of the actions and events giving rise to this action and the Plaintiffs' claims occurred within this judicial district.

26.     This Court has personal jurisdiction over the Defendants because Defendants' principal place of business is within this District, Defendants have imported, distributed, offered for sale, sold, or shipped merchandise to persons within this District, Defendants regularly transact and conduct business within this District, and Defendants otherwise have made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

27.     Defendants Silvio Marsan (native of Crotia and father to Defendants Stephan and Yvan Marson), Stephen Marsan, Yanick Marsan, Jessy Longo, Roberto Rivoni and Maude Lise Kermabon, are all individuals who are doing business in the County of Los Angeles and who are responsible for controlling, directing and managing the operation of Defendants' business operations Marsan LTD, STY888, YYGM and Brandy and Melville within the County of Los Angeles and the State of California.

## THE PARTIES

28.     Plaintiff Megan Miller is an artist whose artwork was pirated by the Defendants, copied and passed off as their own for commercial profit.

29.     Plaintiff Sara Lyons is also an artist whose artwork was pirated by the Defendants, copied and passed off as their own for commercial profit.

30.     Defendant Silvio Marsan of Zadar, Crotia, is the founder of Brandy Melville and currently owns approximately 20% of the company personally and directly, and is doing business in the County of Los Angeles.

31.     Defendant Stephan Marsan is the son of Silvio Marsan and resides in the United States where he, along with the other named Defendants, controls the operations of Brandy Melville in California, the United States and Canada, and is doing business in the County of

Los Angeles.

32.     Defendant Yvan Marsan is the son of Defendant Silvio Marsan and also responsible for the control and management of Brandy Melville and is doing business within the County of Los Angeles.

33.     Defendant Maude Lise Kermabon owns directly, and with the Marsans, controls Brandy Melville and is doing business within the County of Los Angeles.

34.     Brandy Melville is the name chosen by the Marsan family for a chain of clothing stores that Marsan family owns and controls.

35.     The Marsans and Kermabon are doing business in the State of California, County of Los Angeles, via their Brandy Melville stores.

36.     YYGM states in lawsuits it has filed with this Court (e.g., CV14-04637-PA (VBKx) and CV15-00236) that it is doing business in this judicial district.

37.     Defendants STY888, YYGM and Brandy Melville, controlled by the individually named Defendants, have intentionally failed to comply with the California *Corporations Code* in that these Defendants have failed to register with the Secretary of State prior to doing business in this State as required by law.

38.     The Defendants, and all of them, have failed to register with the Secretary of State and establish an agent for service of process in this State in an effort to frustrate persons with claims against these Defendants and to avoid their obligations and liabilities.

39.     This intentional failure to comply with registration and other state requirements is an element of the Defendants' efforts to frustrate claimants' rights, such as the Plaintiffs at issue in this action.

40.     Brandy and Melville is the name of the retail clothing stores that defendant YYGM, S.A., claims it does business under in the State of California and within the County of Los Angeles, by its own admission in, e.g., CV14-04637 and CV15-00236.

41.     According to filings with the U.S. Patent and Trademark Office, the trademark for Brandy Melville was held by Stephan Marson through 2009 while there after through to the present time Brandy and Melville has been assigned to Yvan Marson.

6

BRANDY & MELVILLE

| | | |
|---|---|---|
| Word Mark | BRANDY & MELVILLE | |
| Goods and Services | IC 016. US 002 005 022 023 029 037 038 050. G & S: Paper, cardboard and goods made from these materials not included in other classes, namely, boxes; printed matter, namely, flyers, pamphlets and books in the field of clothing; book binding material; photographs; office requisites except furniture, namely, staplers; plastic materials for packaging not included in other classes, namely, plastic bags | |
| | IC 018. US 001 002 003 022 041. G & S: Leather and imitations of leather, and goods made of these materials not included in other classes, namely, handbags | |
| | IC 025. US 022 039. G & S: Clothing, namely, pants, shirts, undergarments, skirts and dresses; footwear; headwear; leather and imitation leather belts | |
| Standard Characters Claimed | | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK | |
| Serial Number | 85176166 | |
| Filing Date | November 13, 2010 | |
| Current Basis | 44E | |
| Original Filing Basis | 1B;44D | |
| Published for Opposition | November 15, 2011 | |
| Registration Number | 4093051 | |
| Registration Date | January 31, 2012 | |
| Owner | (REGISTRANT) Mr. Yvan Marsan INDIVIDUAL FRANCE Via G. Buffi 2 Lugano SWITZERLAND CH6900 | |
| Assignment Recorded | ASSIGNMENT RECORDED | |
| Attorney of Record | Michael Wolf | |
| Priority Date | November 12, 2010 | |
| Type of Mark | TRADEMARK | |
| Register | PRINCIPAL | |
| Live/Dead Indicator | LIVE | |

42.     Plaintiff is informed, believes and thereon alleges that there exists, and at all times relevant has existed, a unity of interest in and ownership between Defendants Longo, Rivoni and Marson on the one hand and STY888, YYGM and Brandy Melville on the other hand, such that any individuality and separateness between Defendants Longo, Rivoni and Marson and STY888,YYGM and Brandy Melville has ceased to exist; that STY888, YYGM and Brandy Melville are, and at all times relevant herein have been, the alter egos of Defendants Longo, Rivoni and Marson and to such an extent that any individuality or separateness of YYGM and Brandy Melville on the one hand, and Defendants Longo, Rivoni and Marson on the other hand, does not, and at all times relevant herein did not, exist.

43.     Plaintiff is informed and believes and thereupon alleges that, except as otherwise alleged, each Defendant is and at all times relevant was the agent, employee, partner, joint-venturer, subsidiary or affiliate of each of the other defendants, and in doing the

things alleged herein, was acting with the course and scope of such position with the permission, knowledge and consent of the other Defendants.

44.    Defendants Longo, Rivoni and Marson have treated STY888, YYGM and Brandy Melville as their alter egos and not as separate entities.

45.    Defendants Longo, Rivoni and Marson so dominate and control STY888, YYGM and Brandy Melville that they are indeed the Defendants' alter egos.

46.    Plaintiff further alleges Defendants Longo, Rivoni and Marson have failed to maintain minutes and adequate corporate records.

47.    Upholding the business entity and allowing for Defendants Longo, Rivoni and Marson to dodge personal liability for their obligations and would sanction fraud, theft and promote injustice.

48.    Plaintiff will amend this complaint to allege the true names and capacities of the Doe defendants when ascertained.

## **GENERAL ALLEGATIONS**

49.    This action is brought against the named Defendants (hereinafter referred to collectively as the "Brandy Melville Defendants") regarding their illegal use and misappropriation for commercial purposes of the plaintiff Sara Lyon's copyrighted and trademark[2] signature artwork and the copyrighted artwork of plaintiff Megan Miller.

## **THE PIRATING OF ARTIST SARA LYON'S WORK**

50.    Plaintiff Lyons is a prominent Southern California artist and illustrator with thousands of followers on Instagram, Facebook, Tumblr, etc.

51.    Lyons is the creator of an original graphic work of art entitled "Whatever Forever" as pictured below.

---

[2] Plaintiff has not registered her artwork with the USPTO but refers to her use of her created artwork in her geographic area, including California.



52.    The Plaintiff's "Whatever Forever" is her copyrighted original artwork.

53.    In addition, "Whatever Forever" is the Plaintiff's signature work of art and craft—her trademark piece by which she is identified.

54.    The Defendants have a well-documented history and a *modus operandi* of stealing the work of artists, such as the Plaintiffs', and passing off these works of art to consumers as their own.

55.    These Defendants merchandise these artists' works for the Defendants' profit and to the exclusion of the Artists; for example, selling these young artists' works as graphics on the Defendants' popular and commercially successful T-shirts.

56.    Compounding matters, not only did the Defendants copy and unlawfully create images for sale on their clothing from these Plaintiffs' Art, but their illegal copies are of a substandard artistic quality, thereby damaging further the Plaintiffs' artistic reputation and integrity and diluting their work and injuring their Artist reputations.

57.    The Defendants' unlawful reproduction and creation of a substandard derivative work damaged the integrity and purity of the original work thereby damaging the Artist's reputation while diluting her work and her brand.

58.    The Defendants cost to produce these shirts was approximately $2 and the Defendants were selling the shirts for $20 or more.

59.    The Defendants marketing and merchandising of the Plaintiff's original artwork and trademark created consumer confusion with consumers being led to believe the Defendants were the owners and creators of the artwork that the Defendants were unlawfully

selling.

60.     The Defendants were illegally passing-off the Plaintiff Artist's work as their own.

61.     The Defendants were unlawfully merchandising the Plaintiff's artwork across the United States as well as in Southern California where the Plaintiff-Artist is based.

62.     The Plaintiff also merchandises her work, her signature "Whatever Forever" on a wide-range of items, including higher quality shirts, coffee mugs, decorations, etc.





10



63.     The Defendants' unauthorized use of the Plaintiff's work was doubly damaging in that not only did the Defendants wrongfully exploit the Plaintiff's intellectual property, but they tarnished her reputation, diluted her work and brand, and damaged her image and public persona while taking sales away from her product line, as outlined herein.

## THE DEFENDANTS' DAMAGING ASSOCIATION WITH THE ARTISTS

"**For a growing number of Brandy critics and fashion activists, Brandy Melville is an oppressive ideological force that supports social evils such as poor self-esteem, distorted perceptions of weight, social exclusion and eating disorders**." (*The Huffington Post,* 10-17-2014)

64.     The Defendants' *Brandy Melville* has been the subject of much media and social media criticism because of their "one size fits most" policy and their marketing which features nothing but "underweight" young Caucasian[3] teenagers (e.g., ~15 year old).

65.     The Brandy Melville marketing philosophy of exclusion of people who do not fit an "ideal" body type is directly contrary to both of the Plaintiffs Artists' fundamental core

---

[3] "Brandy Melville has posted about 336 pictures on Instagram since the start of 2014, yet only two seemingly non-Caucasian models are featured, neither of whom would be described as curvy."  USA Today, Brandy Melville*: One Size Doesn' t Always Fit Most,*  Madison Mills April 4, 2014

values and thereby the Defendants' use of these Artists' work, which indicates to the public that these Artists are onboard with this message, is severely damaging to the Artists, personally and professionally.

66.    "Brandy Melville's company practices are toxic to our culture" reports an article in the *Daily Trojan.*[4]

67.    "Now here's a problem. One size does not fit most. According to *The Los Angeles Times*, the average American woman is a size 14.  The crop-tops and miniskirts that litter the shelves of Brandy Melville would barely cover the average American.  So, factually, the label is wrong.  ***Secondly, this type of a store environment — one that emphasizes girls of other sizes are not welcome — is extremely damaging to female self-esteem***. Brandy Melville embarrasses girls of different sizes by insinuating that 'most' women are petite, when in fact, they are not. According to the National Association of Anorexia Nervosa and Associated Disorders, in a survey of 185 female students on a college campus, 58 percent felt pressure to be a certain weight. Furthermore, ***companies such as Brandy Melville fuel eating disorders by propagating an ideal body shape. According to the National Eating Disorders Association, young people go to great lengths to meet these unreasonable societal expectations: More than 50 percent of teenage girls use unhealthy weight control behaviors such as skipping meals, fasting, smoking cigarettes, vomiting and taking laxatives.***[5]

68.    "**For a growing number of Brandy critics and fashion activists, Brandy Melville is an oppressive ideological force that supports social evils such as poor self-esteem, distorted perceptions of weight, social exclusion and eating disorders**." (*The Huffington Post,* 10-17-2014, Why Brandy Melville Should Listen to Its Plus-Size Fans, by Markus Geiser.)

69.    In addition to being marketed in a way that "fuels eating disorders" the Defendants sell clothing and merchandise that reinforces negative teenage attitudes.

70.    For example, in the Lindsey Lohan movie aptly called *Mean Girls,* the Film's

---

[4] *Daily Trojan,* September 4, 2013, Rini Sampath.

[5] *Daily Trojan,* September 4, 2013.

COMPLAINT

"mean girls" refused to let anyone who was not pretty enough or cool enough sit with them at lunch—the point of the movie was to show such "mean girl" behavior was neither healthy nor positive.

71.   But the Defendant's Brandy Melville actually markets itself so as to reinforce those negative mindsets and stereotypes, even selling shirts and signs that say "**You Can't Sit With Us**" prompting an article in the *Chicago Tribune* entitled *Reject 'You Can't Sit With Us' Shirts* (December 30, 2014, by Heidi Stevens).

72.   An article in the *Business Insider* cited student media reactions as well:

*"The last thing women need is another company creating low self-esteem and body image issues," blogger Laura Zaneuth writes. "I will not support a Brandy Melville or any company that discriminates the majority of women."*

73.   Below is a typical Brandy Melville model image from the *Brandy Melville* Instagram page                                                  (as shown in the image's caption).



74.   Directly contrasted with the Defendants' "oppressive ideological force that supports social evils such as poor self-esteem, distorted perceptions of weight, social

exclusion and eating disorders" are the Plaintiffs' all-encompassing, all-embracing, non-discriminating views of the Artist as well as their pro-feminist views.

75.    In fact, most Artists consider themselves to be "different" and society has typically viewed them as different as well—further compounding the inappropriateness of these Artists' works being used by a company that is <u>represents the antithesis of accepting those who are different.</u>

76.    Plaintiff Lyons states she finds the "one size fits all 'disgusting' as I am a feminist and supportive of women, particularly young and impressionable girls, accepting and loving their own body image" and "I went to one of their stores and tried on a skirt.  I am 5'4" and 120 pounds and it barely fit me."  What kind of message does that send 10 to 15-year-old girls?  **Brandy Melville is not in line with my personal, artistic or business values and their using my known work on their shirts made it look like I was endorsing their values, which is opposite of the truth."**

77.    Brandy Melville's primary marketing focus is via social media, as is the primary marketing of both Plaintiffs.

78.    When word got out to social media that the Plaintiff Lyons wanted the Defendants to cease their use of her artwork, the Defendants used their powerful social media machine to engage in cyber-bullying campaign and personally attack the Plaintiff, living up to their "mean girls" persona and posting things on the internet like "you should be glad they stole your art work, you're ugly and you have a big nose!"

79.    The Defendants' unauthorized use was so disturbing, and compounded by their cyber-bullying, Plaintiff suffered extreme anxiety and panic attacks, all of which was medically documented.

**THE DEFENDANTS INTENTIONALLY CONCEAL THEIR IDENTITY TO FACILITATE THEIR ILLICIT CONDUCT**

80.    When the Plaintiff sought to contact the Defendants she found it next to impossible as there was no agent listed with the Secretary of State nor any corporate phone

number or address anywhere to be found.

81.    Plaintiff Lyons then went to a store in an effort to locate a person to speak with about these matters yet no one would tell her where their corporate headquarters were.

82.    **"It seemed like their actions, both in stealing my work and in being impossible to find, were deliberate"** states the Plaintiff.

83.    When the Plaintiff finally managed to track down Defendant Longo he proceeded to give the Plaintiff the run-around in their emails.

84.    Longo refused to provide a corporate address or even a corporate email address, instead conducting all his communications with the Plaintiff via his personal Gmail account.

85.    The Plaintiff thought this odd: "I am not ignorant when it comes to how corporations are run and I found it very unusual that they would be handling all their business through personal Gmail addresses."

86.    Longo claimed he was not management but that he would have someone contact the Plaintiff, which never happened.

87.    After weeks of going in circles the Plaintiff realized they were simply stone-walling her.

88.    The Plaintiff also discovered she was just one of many artists these Defendants had given the runaround after exploiting their work without their consent.

89.    As the artist Laura McMahon, also known as Brain Feotus states**:**  "After contacting Brandy Melville I was confident that the issue would get resolved," McMahon wrote. **"However after months of chasing them for a resolution, all the while having faith in their professionalism, <u>I must out them as a company that is making profit from someone else's hard work and creative thinking</u> — while no credit or financial compensation has been provided."**

### PLAINTIFF MEGAN MILLER'S EXPERIENCE
### WITH THE DEFENDANTS' PARALLELS SARA LYON'S EXPERIENCE

90.    Plaintiff Miller's experience with these Defendants is nearly identical to that of

Sara Lyons (described above).

91.     The Defendants have <u>admitted</u> to copying Miller's work when an employee of the Defendants contacted Miller and stated they had stolen her artwork.

92.     The image on the left is the Plaintiff Miller's artwork while the image on the left is the Defendants copying of her work and placement on their T-shirts which they sold through their chain of Brandy Melville stores.

 

93.     Compounding matters, the Defendants' copy of the Plaintiff Artist's work poorly represents the Plaintiff's art, further diluting the Artist's reputation and her work's value.

94.     Likewise, the Defendants' copy of Lyon's artwork was a poor copy as well.

95.     The Defendants, who boast they sell clothing and merchandise across North America and Europe, and whose company representative is an experienced entertainment attorney in Beverly Hills, know they must clear rights to images before they can exploit artists' work on their clothing.

96.     It is an unfair business practice for a business to pirate the work of young and talented artists and then market their work as their own to consumers in order to create a "hip

and cool" image while garnering millions of dollars in profit to the exclusion of the Artists.

97.     As part of their *modus operandi,* these Defendants realized they will more often than not get away with their theft and unfair business practices which consequently makes it profitable to engage in conversion and passing off of artists' works as their own.

98.     The Defendants recognize (i) an Artist may not realize their artwork was stolen, (ii) the Artist may not know how to go about vindicating their rights and (iii) an Artist who knows their rights may nevertheless be unable to find legal representation willing to engage in lengthy and expensive litigation and therefore their rights may go without vindication, and (iv) if the Defendants make it difficult to be found or located so as to be held accountable for their pirating, Artists may give up their efforts to enforce their rights.

99.     The Defendants knowing the foregoing realize for every time they are held accountable they may get away with the unlawful use of artists works ten additional times, thereby making their illegal conduct economically rewarding.

100.     The Defendants have unlawfully exploited the art of other artists, including Laura McMahon, who goes by the name "Brain Feotus"—McMahon work on the left, Defendants' copy on a T-shirt on the right.



101.     As with the Plaintiff's work the copy is a degraded version of the Artist' work.

17

1
2
3
4
5
6
7
8
9
10
11



IMAGE STAR STYLE

'After contacting Brandy Melville I was confident that the issue would get resolved,"
McMahon wrote. "However after months of chasing them for a resolution, all the while
having faith in their professionalism, I must out them as a company that is making profit
from someone else's hard work and creative thinking -- while no credit or financial
compensation has been provided.'

12      102.   The                                         Defendants also converted Isabella

Rose

Taylor's

artwork,

selling it

on shirts

while

also

diluting

her work

with a

sub-

standard



derivation.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

103.    In addition to Plaintiff Lyons, Isabella Rose Taylor and Laura McMahon, the Defendants converted the work of Masonic Boom called *Elephants.*  (On the left is the Defendants' shirt and on the right is the Artist's original work they copied.)




104.    Plaintiff Miller wrote on her Tumblr page upon discovering the Defendants had pirated her art, stating:  "**I've seen situations where certain big stores rip off small artists and steal their designs but never thought it would happen to me.  I'm not very good at explaining myself but basically a really popular clothing store called Brandy Melville started selling a shirt with my drawing on it but changed just how the moon looks. This**

**makes me really upset and I don't really know what to do in this situation…"**

105.   The Defendants even copied famously known works, including "LA Fingers" by Estevan Oriol.

106.   Oriol is one of LA's most celebrated and influential documentary and fashion photographers, while simultaneously gaining widespread acclaim for his work as a film and music video director.

107.   The irony with the all-white girl image that the Defendants' have intentionally cultivated is that Oriol is a Mexican-American famous for capturing Los Angeles' urban and hip-hop street life.

108.   There can be no doubt that the Defendants are knowingly and intentionally infringing the rights of Artists, as for example, Oriol's "LA Fingers" has been featured on the **covers of several magazines** while also being marketed by Oriol on his own clothing line.

109.   Hollywood actress Jessica Alba was photographed in 2008 while out in Los Angeles wearing Oriol's LA Finger's t-shirt and the image became iconic.

110.   In 2011 LA Fingers was featured at the Los Angeles Museum of Contemporary Art ("MOCA").

111.   LA Fingers was also the cover of one of Oriol's books.

112.   Notwithstanding all the publicity regarding "LA Fingers" and Oriol's own **LA Fingers clothing line**, the Defendants commercially exploited Oriol's creative work, without his consent, to sell their Brandy Melville shirts.

113.   Unlike Oriol's work, which was a photograph, the Plaintiff Artists' work in this case is 100% image creation through drawing and illustration.

114.   Given the foregoing, there can be no doubt that the Defendants *modus operandi* is to copy, misappropriate and pass off the intellectual properties of others for their own financial gain while also diluting the Artists' rights and property values—which is precisely what the Defendants have done to Plaintiff Sara Lyons.

115.   Prior to filing this lawsuit the Plaintiffs each engaged in communications with the Defendants in an effort to resolve this matter.

116.   However, rather than resolve the matter the Defendants employed delay tactics

designed to frustrate the Plaintiffs' respective settlement efforts.

117.    The Defendants even lied to Plaintiff Sara Lyons about their use and marketing of her artwork that they so clearly had done.

118.    The Defendants conduct has caused the Plaintiffs extreme emotional upset, damaged their Artists' image, reputation and credibility as Artists.

119.    The Defendants have profited unlawfully, using the Plaintiffs' artwork while taking sales away from the Plaintiffs regarding their own artwork.

120.    The Defendants have benefited from the Plaintiffs' artwork, which has enhanced the Defendants' marketing efforts to be perceived as cool, young, hip, artsy and edgy.

121.    The Defendants' actions were knowing and intentional and these Plaintiffs are just two Artists in a string of many whose work has been stolen by the Defendants, thereby justifying the imposing of punitive, statutory and exemplary damages.

122.    The Defendants' unfair business practices have damaged the Plaintiffs, confused Consumers and diluted the value of the Artists and their artwork.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement

123.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

124.    Plaintiffs are informed, believe and thereon allege Brandy Melville and the Defendants who control it, have knowingly and intentionally copied Plaintiff Lyon's original artwork "Whatever Forever" and Megan Mille's artwork as well.

125.    The Defendants control all aspects of the clothing and merchandise sold through their Brandy Melville brand.

126.    Plaintiff Sara Lyons is responsible for creating a unique work, the "Whatever Forever" image, including all the elements of the composition.

127.    Plaintiff Megan Miller is responsible for creating her unique artwork, as

depicted above.

128.   The Defendants copied both these Plaintiffs' artwork in producing their merchandise for sale to the public.

129.   The Defendants copied the Plaintiff's image of two hands forming a distinctive "W."

130.   The Defendants also copied the Plaintiff's banner and its shape beneath the "W" forming hands.

131.   The Defendants copied the words "Whatever Forever" and its placement inside the banner as well as the banner's placement below the hands forming the "W" for "whatever."

132.   In fact, the Defendants' copying of the Plaintiff's banner is *exact* with the identically crafted front; size, shape, spacing, etc.

133.   The Defendants copied the entire composition of Plaintiff Megan Miller's artwork of the hand with the sun and the moon in its palm and imaged fingers, as shown hereinabove.

134.   The Defendants are sophisticated parties and their copying the Plaintiffs' art work was knowingly done to profit unlawfully from the Artists' work.

135.   These Defendants have engaged in this unlawful conduct time and time again, thereby warranting the imposition of statutory, exemplary and punitive damages.

**SECOND CLAIM FOR RELIEF**
**Violation of California *Business & Professions Code* Sections 17200 et seq.**

136.   Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

137.   The *Unfair Business Practices Act* defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

138.   The actions and practices of the Defendants as alleged hereinabove constitute unlawful, unfair, deceptive or fraudulent business practices in violation of California's Unfair

22

Competition Law (Business and Professions Code §17200 et seq).

139.   Defendants need only to have violated one of the three provisions set forth above to be strictly liable under this Cause of Action.

140.   The above-described conduct by the Defendants, including the copying and merchandising of the Plaintiffs' artwork without their consent and to the direct detriment of the Plaintiff's own commercial interests, while deceiving the public and trading off the Artists' work, etc., constitutes unlawful, unfair and fraudulent business acts and practices engaged in by these Defendants.

141.   The unfair and unlawful business acts and practices engaged in by the Defendants violate California's *Unfair Competition Laws*, as alleged hereinabove, including the Defendants offering for sale merchandise and clothing that bears the artwork of the Plaintiffs yet without obtaining the legal rights to use said artwork nor did they pay the Plaintiffs for their use of her intellectual property.

142.   The unfair and unlawful business acts and practices engaged in by the Defendants violate California's *Unfair Competition Laws*, as alleged hereinabove, including the Defendants unlawfully passing off the Plaintiff's artwork as their own, thereby unfairly taking credit for the "cool and hip" image the Plaintiff's work creates.

143.   Consumers then incorrectly associate this "cool and hip" factor with the Defendants when in fact it was the Artists that created the materials that give the Defendants their "cool and hip" image.

144.   The unfair and unlawful business acts and practices engaged in by the Defendants violate the *Unfair Competition Laws*, as alleged hereinabove, including the Defendants offering for sale merchandise and clothing that directly competes with the merchandise and clothing sold by the Plaintiff, thereby wrongfully taking sales away from the Plaintiff and damaging her business.

145.   The unfair and unlawful business acts and practices engaged in by the Defendants violate the *Unfair Competition Laws*, as alleged hereinabove, including the Defendants offering for sale merchandise and clothing that bears the artwork of the Plaintiffs yet without obtaining the legal rights to use said artwork and without paying these Artists for

their work, thereby profiting unfairly from the Artists' work and unique special talents.

146.    The unfair and unlawful business acts and practices engaged in by the Defendants violate the *Unfair Competition Laws*, as alleged hereinabove, including the Defendants use of the Plaintiff's artwork which effectively implies to consumers that the Plaintiffs endorse the Defendants' practices and social views, which are in fact directly contrary to the Plaintiff Artists' views, thereby damaging the Plaintiffs' reputations and integrity as Artists while also deceiving the public.

147.    The unfair and unlawful business acts and practices engaged in by the Defendants violate California's *Unfair Competition Laws*, as alleged hereinabove, including the Defendants offering for sale merchandise and clothing that bears the artwork of the Plaintiffs which fraudulently induces consumers to purchase the Defendants' products believing the Plaintiff Artists are being compensated for their work as artists and that they are purchasing authentic artists' creative work and supporting the work of the Artists.

148.    The unfair and unlawful business acts and practices engaged in by the Defendants, as alleged hereinabove, has injured California consumers by causing them to purchase the Defendants' products under false pretenses and without knowing they were participating in the violation of copyrights and in the denial of the Artists their compensation and lawful credit for their work.

149.    If Consumers had been informed of these facts, including the facts that the Defendants knowingly steal the artwork of young female artists, Consumers of the Defendants products, almost entirely your females like the Artists, would not have purchased products from the Defendants and many would have boycotted the Defendants' stores.

150.    These Defendants have generated substantial income and illicit profits as a result of their unlawful and unfair business practices alleged herein.

151.    The unlawful and unfair business practices complained of herein, including the Defendants continuous illegal use of copyrighted material and fraudulent passing off of those works to the consumers, is ongoing and presents a threat and likelihood of continuing harm and confusion and unfair business practices, thereby injuring the general public and legitimate California businesses, including the Plaintiff's business of selling her artwork on T-shirts and

other products.

152.     Plaintiffs have standing to assert this claim under California *Business and Professions* Code § 17204 on behalf of herself and the general public of this State.

153.     Pursuant to California's *Business and Professions Code* § 17200, et seq., Plaintiffs are entitled to enjoin the Defendants' unlawful and unfair practices alleged hereinabove and to obtain restitution of all funds obtained by the Defendants by reason of and through the use of these unlawful, unfair and fraudulent acts and practices.

154.     Plaintiffs, as a private attorney general, seeks an order requiring Defendants to cease and desist from their willful, unfair, and deceptive acts and requiring Defendants to restore any of the wrongful gains they have accrued from their unfair and deceptive practices, including restitutionary disgorgement of all profits accruing to the Defendants because of their unfair, unlawful and deceptive practices, attorneys fees and costs, declaratory relief and a permanent injunction enjoining the Defendants from their unlawful, unfair and deceptive activity.

155.     Pursuant to Code of Civil Procedure §1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, costs and expenses incurred in bringing this action.

## **THIRD CLAIM FOR RELIEF**
### **FEDERAL UNFAIR COMPETITION**
### (15 U.S.C. § 1125(a))

156.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

157.     Defendants' distribution, marketing, promotion, offering for sale and sale of goods bearing the Plaintiffs' artwork constitutes false designations of origin and false representations that Defendants' products originate from or are authorized by the Plaintiff Artists when in fact they are not.

158.     Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive the Plaintiffs of their ability to control the consumer perception of its products and services offered, placing the Plaintiff's reputation, artistic integrity and goodwill

25

of the Plaintiffs' wrongfully in the hands of Defendants.

159.   Such conduct limits and impairs the Plaintiffs' abilities to market their work to consumers.

160.   As a result of Defendants' unauthorized the Plaintiffs' artwork the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendants' products.

161.   Defendants' conduct is willful, intended to reap the benefit of the Plaintiff Artists' goodwill, and violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

162.   The Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

163.   As a result of Defendants' wrongful conduct, the Plaintiffs have suffered and will continue to suffer damages.

164.   Defendants had direct and full knowledge of Plaintiffs' prior use of and rights in its works before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
COMMON LAW TRADEMARK INFRINGEMENT

165.   Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

166.   Plaintiffs have common law rights in their respective Trademarks based on their continuous use of their marks within their geographic regions and Plaintiffs.

167.   The Defendants' unauthorized use of the Plaintiffs' Trademarks to promote, advertise, market, and/or sell their goods is likely to cause confusion, mistake, and deception of the public as to the identity and origin of Defendants' goods, or as to a connection or affiliation with the Plaintiff Artists, or permission from the Plaintiff Artists that does not exist, causing irreparable harm to Plaintiff. The Defendants' conduct thus constitutes common law trademark infringement.

26

168.    Despite their actual and constructive knowledge of Plaintiffs' ownership and prior use of their Trademarks, Defendants have continued to use the Plaintiffs' Trademarks without Plaintiffs' authorization or consent.

169.    The Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill of the Plaintiffs and their marks.

### FIFTH CLAIM FOR RELIEF

COMMON LAW UNFAIR COMPETITION

170.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

171.    Defendants' distribution, marketing, promotion, offering for sale, and sale of goods bearing the Plaintiffs' artwork and marks constitutes false designations of origin and false descriptions or representations that Defendants' products originate from, or are offered, sponsored, authorized, licensed by, or otherwise somehow connected with the Plaintiffs when in fact they are not.

172.    As a result of Defendants' conduct, the public is likely to believe that Defendants' goods or services have originated from and have been approved and authorized by the Plaintiffs.

173.    Defendants' unauthorized use of the Plaintiffs artwork falsely represents that Defendants' goods emanate from or are authorized by Plaintiffs and places beyond Plaintiffs control the quality of such products, and the message that is associated with such products.

174.    Defendants' conduct is willful, intended to reap the benefits and the goodwill associated with and arising from the Plaintiffs' artwork and has caused and continues to cause damage and injury to the Plaintiffs and constitutes common law unfair competition.

### SIXTH CLAIM FOR RELIEF

VIOLATIONS OF THE *CONSUMER LEGAL REMEDIES ACT*

175.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

176.    In doing the things alleged hereinabove these Defendants have violated California's *Consumer Legal Remedies Act,* including specifically California *Civil Code* Section 1770, which provides "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful  (1) Passing off goods or services as those of another. (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services and (3) Misrepresenting the affiliation, connection, or association with, or certification by, another.

177.    In doing the things alleged hereinabove the Defendants have been passing off the goods as those of the Plaintiffs (§1770(a)(1)).

178.    In doing the things alleged hereinabove the Defendants have misrepresented the source and approval of the goods they have sold which bear the Plaintiffs' artwork and marks. (§1770(a)(2)).

179.    In doing the things alleged hereinabove the Defendants have misrepresented the affiliation and association of the Plaintiff Artists with the Defendants. (§1770(a)(3)).

180.    In doing the things alleged herein, the Defendants actions have been intentional and willful.

181.    Plaintiffs seek statutory damages, including injunctive relief, punitive damages, attorneys fees and any other relief the Court may award.

## SEVENTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

182.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

183.    As a matter of law, the Defendants should not be allowed to have the fruits of Plaintiffs' labor and also the money value of that labor.[6]

---

[6] *Kossian v. American Nat. Ins. Co. (*1967) 254 Cal.App.2d 647: "The doctrine [of unjust enrichment]

184.   The Plaintiffs created the valuable artwork that the Defendants copied, marketed and sold on the clothing at multiple retail locations.

185.   In addition to profiting from the Plaintiff's artwork through sales of merchandise, the Defendants benefited even more significantly by their exploitation of the Plaintiffs' art which created a cool, hip, young, trendy, edgy and fashionable marketing image for the Defendants.

186.   Thanks to this image created and enhanced by these Artists, which these Defendants exploit for their financial benefit, the Defendants are able to portray themselves to the public as a source of cool, hip and edgy clothing, thereby drawing in young consumers who seek out this sort of clothing and image.

187.   In doing these things, the Defendants are exploiting these Artists works of art as well as their good will, for their own financial benefit and to the exclusion of the Artists.

188.   The Defendants have knowingly and intentionally chosen not to obtain the consent of the Plaintiffs with respect to using these Artists' art work.

189.   The Defendants have intentionally profited from the Artists' work and goodwill while failing to account to the Artists for their contributions.[7]

190.   The Defendants know and have even admitted that they are aware that the works of art they are commercially exploiting were stolen by them from these Artists. [8]

---

also recognizes an obligation imposed by law regardless of the intent of the parties. In these instances there need be no relationship that gives substance to an implied intent basic to the "contract" concept, rather the obligation is imposed because good conscience dictates that under the circumstances the person benefited should make reimbursement. (Desny v. Wilder, 46 Cal.2d 715, 734 [299 P.2d 257]; Ward v. Taggart, 51 Cal.2d 736, 743 [336 P.2d 534]; County of Santa Clara v. Robbiano, 180 Cal.App.2d 845, 848 [5 Cal.Rptr. 19]; 1 Williston on Contracts (3d ed.) p. 12; Thurston, Recent Developments in Restitution, 45 Mich.L.Rev. p. 935.

[7] First Nationwide Savings v. Perry (1992) 11 Cal.App.4th 1657, 1631-1632: A. Restitution:  "We begin with the law of restitution.  An individual is required to make restitution if he or she is unjustly enriched at the expense of another. (Rest., Restitution, § 1; California Federal Bank v. Matreyek (1992) 8 Cal.App.4th 125 , 131.) A person is enriched if the person receives a benefit at another's expense. (Rest., Restitution, supra, § 1, com. a.) Benefit means any type of advantage. (Rest., supra, § 1, com. b; California Federal Bank v. Matreyek, supra, 8 Cal.App.4th at p. 131.) The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it. (Rest., Restitution, supra, § 1, com. c.)

[8] "Lack of precedent applicable to the facts peculiar to this case is not surprising, however, as the authors of the Restatement recognize that the essential nature of equity cases concerned with problems of restitution makes definitive precedent unlikely. We are guided by the "Underlying Principles"

191.    The Defendants' retention of the benefits they have derived from unlawfully exploiting the Artists and their work is unjust and inequitable.

192.    The Defendants actions have damaged the Artists' reputations as well as caused the Artists significant financial harms while interfering with the Artists' abilities to market their own competing products featuring their own artwork.

193.    Plaintiffs seek restitution and compensation for their harms and damages caused by these Defendants.

## EIGHTH CLAIM FOR RELIEF
### QUANTUM MERUIT

194.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this Complaint, and incorporates them herein by reference.

195.    By their conduct, the Defendants sought to take advantage of the services and products of the artist Plaintiffs.

196.    The Plaintiffs are in fact responsible for their artistic creations and products as used by the Defendants.

197.    The Defendants have not paid the Plaintiffs for the reasonable value of the goods and services created by the Plaintiff Artists and used by the Defendants, including the Artists' artistic creations and the good will created by an association with these young, hip and trendy artists and their artwork.

198.    The Defendants have acknowledged the Plaintiffs were the owners of these goods and services yet failed to pay the Plaintiffs for their use of the Plaintiffs' goods and

---

delineated in the Restatement on Restitution: "The rules stated in the Restatement of this Subject depend for their validity upon certain basic assumptions in regard to what is required by justice in the various situations. In this Topic, these are stated in the form of principles. They cannot be stated as rules since either they are too indefinite to be of value in a specific case or, for historical or other reasons, they are not universally applied. They are distinguished from rules in that they are intended [254 Cal.App.2d 651] only as general guides for the conduct of the courts ...." (P. 11.)
The governing principle is expressed in the opening sentence of the Restatement on Restitution, as follows: "The Restatement of this Subject deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss." (P. 1.)" *Kossian v. American Nat. Ins. Co. (*1967) 254 Cal.App.2d 647

services.

## JURY DEMAND

199.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a jury trial of all issues that may be tried to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an Order and Judgment as follows:

1. Entry of an order (on a preliminary and permanent basis) requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from using in any manner the artwork, copyrights and trademarks belonging to the Plaintiffs and other similarly situated artists.

2.    Ordering Defendants to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all Internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or its agents bearing the Plaintiffs' artwork, in any manner, or any mark that is confusingly similar to or a colorable imitation of these Plaintiffs' marks;

3.    Ordering Defendants to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of the Plaintiffs' works or marks in furtherance of the scheme alleged herein;

4.    Directing Defendants to provide an accounting of profits made by Defendants as a result of Defendants' unlawful conduct;

5.    Ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiffs within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of the Plaintiffs' artwork and marks as set forth

above;

6.     Ordering Defendants to pay a judgment in the amount of Plaintiffs' damages under 15 U.S.C. § 1117, as well as Defendants' profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial;

7.     Ordering the Defendants to pay a sum equivalent to the benefit the Defendants have received from using the Plaintiffs' artwork to create a hip and edgy image for the Defendants and to the detriment caused by the Defendants to the Plaintiffs as alleged hereinabove in the amount of $1,000,000.00 or as otherwise proven at trial.

8.     For general and special damages in the amount of $1,000,000.00 or more according to proof at trial.

8.     Ordering Defendants to pay Plaintiffs' reasonable attorneys fees and costs of this action under 15 U.S.C. § 1117 and/or California;

9.     Ordering Defendants to pay a judgment for enhanced damages under 15 U.S.C. § 1117;

10.    Ordering the Defendants to pay treble damages pursuant to the applicable statutes;

11.    Ordering the Defendants to pay punitive and exemplary damages sufficient to deter such future illicit conduct by these Defendants and other similarly situated entities engaging in similar conduct;

12.    Granting Plaintiffs such other and further relief as the Court deems just and proper.  RESPECTFULLY SUBMITTED this 25th day of September, 2015

Law Offices of Tristram Buckley

By_____
          Tristram Buckley
     Counsel for the Plaintiffs

COMPLAINT